UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00117-TBR

ENCOMPASS INDEMNITY COMPANY      Plaintiff/Counterclaim Defendant

v.

HAROLD HALFHILL, II,      Defendant/Counterclaim Plaintiff
and
SONYA HALFHILL      Defendant

**MEMORANDUM OPINION**

This matter is before the Court upon the parties' competing Motions for Summary Judgment. Plaintiff/Counterclaim Defendant Encompass Insurance Company (Encompass) has moved for summary judgment, (Docket No. 25), to which Defendant/Counterclaim Plaintiff Harold Halfhill (Halfhill) and Defendant Sonya Halfhill have responded, (Docket No. 26). In that Response, Halfhill brings a Counter Motion for Summary Judgment. (Docket No. 26.) Encompass has filed a Reply to its Motion and Response to Halfhill's Motion, (Docket No. 27), and Halfhill has filed a Reply in support of his Motion and a Sur-Reply in Opposition to Encompass's Motion, (Docket No. 28). These matters now are fully briefed and ripe for adjudication. For the reasons that follow, the Court will GRANT Encompass's Motion and enter summary judgment in its favor.

BACKGROUND

In November 2011, Halfhill was operating a 2001 Polaris Ranger on Carrsville Road in Burna, Livingston County, Kentucky, when he was struck by a pickup truck driven by Robert Belt. It is undisputed that the Halfhills owned the Polaris Ranger. The police report identifies the Polaris Ranger as a "Side-by-Side OHV." (Docket No. 25-3, at 2.) "OHV" is understood to mean "off-highway vehicle." It also is undisputed that the Polaris Ranger was intended for off-road use only. At the time of the collision, Halfhill was using the Polaris Ranger for recreational hunting. Halfhill, who suffered multiple injuries as a result of the collision, avers that the pickup truck driver, Belt, had a minimum limits liability policy and would be considered an underinsured motorist driving an underinsured vehicle. (Docket No. 26, at 2.)

At the time of the accident, Halfhill was insured under a multiple-line policy of insurance (the "Policy") issued by Encompass. The instant dispute arises out of the Halfhills' claim for underinsured motorist (UIM) benefits under the Policy. In relevant part, the Policy states:

> We will pay damages which any covered person is legally entitled to recover from the owner or operator of any underinsured motor vehicle because of bodily injury.
>
> 1. Sustained by a covered person, and
>
> 2. Caused by an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle.

(Docket No. 1-1, at 44 (emphases omitted).) The term "covered person" is defined by the Policy as follows:

1. Covered person means:

    a. You for the ownership, maintenance or use of any vehicle, except while occupying, or when struck by, a vehicle owned by you which is not insured for this coverage under this policy[.]

(Docket No. 1-1, at 43 (emphases omitted).) The declaration pages of the policy identify three vehicles and a boat for coverage under the Policy. Specifically, under the heading "Motor Vehicle Protection," the Policy identifies "Vehicle 1" as a 2008 Nissan Armada, "Vehicle 2" as a 2005 Honda Element, and "Vehicle 3" as a 2011 Ford F-250 pickup truck. (Docket No. 1-1, at 4-6.) The Polaris Ranger is not identified or mentioned in the Policy.

By letter of August 8, 2012, Encompass denied the Halfhills' claim for UIM coverage. (Docket No. 25-5.) In that letter, Encompass explained that Halfhill did not meet the definition of "covered person" because he was occupying a vehicle owned by him that was not insured for coverage under the Policy. (Docket No. 25-5, at 2-3.) Shortly thereafter, Encompass filed this diversity action for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. (Docket No. 1.)

STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury

question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Finally, while the substantive law of Kentucky is applicable here pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).

DISCUSSION

The parties' competing Motions for Summary Judgment present two issues that must be resolved: first, whether the Polaris Ranger is a "vehicle" as that term is used in the Policy's definition of "covered person," and, second, whether Kentucky public policy prohibits the enforcement of policy language that would deny UIM coverage to a person operating a vehicle that he owns but that is not insured for UIM coverage under the policy. The Court will address each in turn.

I. **The Polaris Ranger Is a Vehicle Under the Plain Meaning of that Term.**

The parties do not dispute that the Halfhills owned the Polaris Ranger, that Halfhill was occupying the Polaris Ranger at the time of the accident, or that the Polar Ranger was not insured for coverage under the Policy. However, the parties disagree as to whether the Polaris Ranger is a "vehicle" within the meaning of the Policy. Thus, the resolution of the first issue turns on the interpretation of the terms and language in the Policy.

It is well settled that the proper interpretation of insurance contracts is a matter of law to be decided by a court. *E.g.*, *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010). "[D]etermining whether a contract is ambiguous," the Kentucky Supreme Court advises, also "is a question of law for the courts." *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer. Dist.*, 174 S.W.3d 440, 448 (Ky. 2005). "In the absence of an ambiguity, Kentucky courts will enforce a written instrument strictly according to its terms and will assign those terms their ordinary meaning." *Davis v. Siemens Med. Solutions USA, Inc.*, 399 F. Supp. 2d 785, 792 (W.D. Ky. 2005) (citing *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky.

2003)). Similarly, where a term is not defined in the policy of insurance, courts "must afford it its ordinary meaning, if that meaning is not ambiguous." *Cincinnati Ins.*, 306 S.W.3d at 73 (citing *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007)); *see also Pierce v. W. Am. Ins. Co.*, 655 S.W.2d 34, 36 (Ky. Ct. App. 1983) ("Terms in an insurance policy are to be given their plain meanings, and courts should not make a different insurance contract for the parties by enlarging the risk contrary to the natural and obvious meaning of the existing contract." (citing *Weaver v. Nat'l Fid. Ins. Co.*, 377 S.W.2d 73 (Ky. 1963))). Thus, the initial question that must be resolved is whether the term "vehicle," as used in the Policy, is ambiguous.

A term may be found ambiguous when its meaning is susceptible to two or more reasonable interpretations. *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003) (citing *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994)). Stated differently, "[a] contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Pedicini v. Life Ins. Co. of Ala.*, 682 F.3d 522, 526 (Ky. 2012) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002)). "[A]n insurance contract is not regarded as ambiguous simply because controversy exists, and the parties have asserted contrary interpretations of the language of the contract." *Cincinnati Ins. Co.*, 306 S.W.3d at 74 n. 11 (quoting *Amerisure, Inc. v. Wurster Constr. Co.*, 818 N.E.2d 998, 1002 (Ind. Ct. App. 2002)). Unless the court finds a term to be ambiguous, it cannot "[u]nder Kentucky law . . . reference extrinsic facts or aids" to interpret its meaning. *Davis*, 399 F. Supp. 2d at 792 (citing *Frear*, 103 S.W.3d at 106; 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 30:6 (4th ed.)). Furthermore, "[t]erms of insurance contracts have no technical

meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Ky. Ass'n of Cntys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005) (quoting *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)); *see also Hendrix v. Fireman's Fund Ins. Co.*, 823 S.W.2d 937, 938 (Ky. Ct. App. 1991) (holding that if an ambiguity exists, under the "doctrine of reasonable expectations" an insured is entitled to all coverage he may reasonable expect according to the policy's terms); *True*, 99 S.W.3d at 443 (noting that "[t]he reasonable expectations doctrine is based on the premise that policy language will be construed as laymen would understand it and applies only to policies with ambiguous terms" (internal quotation marks and footnotes omitted)). But this "rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with . . . the plain meaning and/or language in the contract." *Id.* (alteration in original) (quoting *Powell-Walton-Milward*, 870 S.W.2d at 226). As the Kentucky Supreme Court has made clear, "[t]he mere fact that [a party] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity." *True*, 99 S.W.3d at 443 (alterations in original) (quoting *Sutton v. Shelter Mut. Ins. Co.*, 971 S.W.2d 807, 808 (Ky. Ct. App. 1997)). The Kentucky Court of Appeals likewise has stated, "[W]e are simply unwilling to 'torture words to import ambiguity into a contract where the ordinary meaning leaves no room for ambiguity.'" *First Home, LLC v. Crown Comm'cns, Inc.*, 2012 WL 95560, at *5

(Ky. Ct. App. Jan. 13, 2012) (quoting *McCarthy v. Chromium Process Co.*, 13 A.3d 715, 720 (Conn. App. Ct. 2011)). Instead, "[o]nly actual ambiguities, not fanciful ones, will trigger application of the doctrine." *Id.* (citing *Powell-Walton-Milward*, 870 S.W.2d at 226). Accordingly, "where there is no ambiguity, the rule of liberal construction in favor of the insured is inapplicable," *McClendon*, 157 S.W.3d at 633 (citing *Frear*, 103 S.W.3d at 106), and "[w]hen the terms of an insurance contract are unambiguous and not unreasonable, they will be enforced," *id.* at 630 (collecting cases).

The Court finds no ambiguity in the Policy's use of the term "vehicle." Although the Halfhills present a thoughtful argument how the term could be construed in a way contrary to the construction urged by Encompass, the fact that the parties present competing interpretations of the term does not render it ambiguous. *See, e.g.*, *Cincinnati Ins.*, 306 S.W.3d at 74 n. 11; *True*, 99 S.W.3d at 443; *Sutton*, 971 S.W.2d at 808; *accord Amerisure*, 818 N.E.2d at 1002. As such, neither the reasonable-expectations doctrine nor the rule of liberal construction in favor of the insured is applicable here. *See McClendon*, 157 S.W.3d at 633; *True*, 99 S.W.3d at 443. Therefore, because the term "vehicle" is not defined in the Policy, the Court will afford that term its "ordinary meaning as persons with the ordinary and usual understanding would construe [it]." *Ayers v. C&D Gen. Contractors*, 237 F. Supp. 2d 764, 769 (W.D. Ky. 2002) (quoting *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 904 (Ky. Ct. App. 1994)); *see Davis*, 399 F. Supp. 2d at 792; *Cincinnati Ins.*, 306 S.W.3d at 73.

As this Court previously has noted, "Kentucky courts often refer to dictionaries in order to determine the ordinary meaning of undefined contractual terms." *Ayers*, 237 F. Supp. 2d at 770 (referencing *Commonwealth v. Whitworth*, 74 S.W.3d 695, 700 (Ky.

2002); *Weaver*, 377 S.W.2d at 75).[1]  WEBSTER'S DICTIONARY defines "vehicle," in relevant part, as "a means of carrying or transporting something."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1386 (11th ed. 2011).  The OXFORD ENGLISH DICTIONARY defines "vehicle" as "a thing used for transporting people or goods, especially on land."  OXFORD DICTIONARIES PRO, http://english.oxforddictionaries. com/definition/vehicle (last visited December 11, 2013). And BLACK'S LAW DICTIONARY similarly defines "vehicle" as "[a]n instrument of transportation or conveyance" or "[a]ny conveyance used in transporting passengers or things by land, water, or air."  BLACK'S LAW DICTIONARY 1693 (9th ed. 2009).  Affording this term its ordinary meaning as persons with the ordinary and usual understanding would, the Court finds that the Polaris Ranger is, without question, a "vehicle" as that term is used in the Policy.

This conclusion is supported by a reading of the Policy as a whole.  Although "vehicle" is not defined in the Policy, "motor vehicle" is defined to mean, among other things, a "motorized land vehicle owned by you or any covered person and designed for

---

[1] Although courts "cannot reference extrinsic facts or aids, to determine the meaning of an unambiguous contract," *see Davis*, 399 F. Supp. 2d 792, Kentucky courts, both federal and state, routinely look to dictionaries for guidance on the interpretation of an unambiguous contractual term.  *See, e.g.*, *Jones v. Bank of Harlan*, 2012 WL 115586, at *4-5 (E.D. Ky. Jan. 12, 2012) (noting that the court must "interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence," just before referencing BLACK'S LAW DICTIONARY to determine the meaning of an unambiguous contractual phrase); *Davis*, 399 F. Supp. 2d at 791-92 (referencing RANDOM HOUSE UNABRIDGED DICTIONARY to interpret the meaning of a contractual term characterized by the court as "absolutely clear and unambiguous"); *First Home*, 2012 WL 95560, at *9 (noting that courts "are required to interpret and strictly enforce the [contract] according to its terms, without reference to extrinsic evidence," just before referencing WEBSTER'S COLLEGIATE DICTIONARY to ascertain the meaning of a disputed contractual term that the court found to be unambiguous); *Discovery Mgmt. Servs., Inc. v. Fackler*, 2005 WL 387018, at *2 (Ky. Ct. App. Feb. 18, 2005) (referencing WEBSTER'S NEW WORLD DICTIONARY to interpret the meaning of an unambiguous contractual term); *see also U.S. Fire Ins. Co. v. Ky. Truck Sales, Inc.*, 786 F.2d 736, 739-40 (6th Cir. 1986) (recognizing the Kentucky Supreme Court's approval of reference to WEBSTER'S DICTIONARY to interpret the plain meaning of nonlegal terms in an insurance policy).

recreational use off public roads." (Docket No. 1-1, at 113-14.) The Polaris Ranger certainly meets this definition. It can be inferred that because the Policy specifically defined the term "motor vehicle" but did not define "vehicle," the former term was intended to be narrower and more exclusive whereas the latter was intended to have a broader, more inclusive meaning. It follows that a plain reading of the Policy language belies the notion that something that qualifies as a "motor vehicle" would not also qualify as a "vehicle."

The Halfhills' references to Kentucky statutory law does not compel a different conclusion. The Halfhills present a well-reasoned argument why the Polaris Ranger should not be considered a vehicle under the Kentucky motor vehicle safety statutes, Ky. Rev. Stat. § 189.010 *et seq.*, and the Kentucky Motor Vehicle Reparations Act (MVRA), Ky. Rev. Stat. § 304.39-010 *et seq.* However, the Halfhills' reliance on these Kentucky statutes and the case law interpreting them is misplaced here, given that the Court need look no further than the plain, unambiguous language of the Policy as it is written to determine the ordinary meaning of this term. While the Policy does state that it "is issued in accordance with the laws of Kentucky" and that "any and all claims or disputes . . . shall be governed by the laws of Kentucky," the Court finds no reason to delve into these various statutory definitions to interpret the ordinary meaning of the term "vehicle." Therefore, regardless whether the Polaris Ranger is a "vehicle" or a "motor vehicle" for purposes of Kentucky motor vehicle safety statutes or the MVRA, the Court concludes that the Polaris Ranger is a vehicle within the plain, ordinary, and unambiguous meaning of that term as it appears in the Policy.

## II. The "Owned But Not Insured" Clause Is Not Void As Against Public Policy.

The second issue that must be resolved is whether Kentucky public policy prohibits an insurer from excluding UIM coverage for the use of a noncovered vehicle that is owned by the insured. Halfhill argues that such a so-called "owned but not insured" clause is void as against public policy. In support, Halfhill references the Kentucky Supreme Court's decision in *Chaffin v. Ky. Farm Bureau Ins. Cos.*, 789 S.W.2d 754 (Ky. 1990), a case in which a similar uninsured (UM) motorist exclusion[2] ultimately was held unenforceable on public policy grounds. In *Chaffin*, the insured held three separate insurance policies issued by the same insurer covering three separate motor vehicles. Each policy provided for UM coverage in the amount of $25,000, and separate premiums were paid for each of the items of UM coverage. The insurer paid $25,000 pursuant to the UM coverage contained in the policy that insured the vehicle involved in the accident but refused to make any payment pursuant to the UM coverage contained in the other two policies. The issue before the Kentucky Court was whether the insured could stack the UM coverage contained in the policies covering the vehicles not involved in the accident. *Id.* at 755-57. Noting that the insurer had accepted three separate UM premiums from the insured while affording her only one item of coverage by writing three separate policies, the Court found that the owned-but-not-insured exclusion was contrary to public policy because it was repugnant to the insured's reasonable expectations with regard to the coverage that had been "bought and paid

---

[2] Kentucky courts recognize little, if any, distinction between UIM coverage and UM coverage. *See Allstate Ins. Co. v. Dicke*, 862 S.W.2d 327, 329 (Ky. 1993) ("In substance, we believe the distinction between the uninsured and underinsured statutes is more illusory than real.").

for." *Id.* at 757. Thus, the Court reasoned that, under the facts at hand, "the coverage bought, paid for and reasonably expected is illusory." *Id.* at 758.

The owned-but-not-insured exclusion in this case does not suffer from the same faults as that in *Chaffin*. Encompass did not issue separate insurance policies; instead, it issued one comprehensive policy that clearly excluded "[any] vehicle owned by you which is not insured for this coverage under this policy." (*See* Docket No. 1-1, at 43.) Thus, unlike *Chaffin*, this case does not present a stacking issue. Moreover, Halfhill does not contend that he could not have included the Polaris Ranger under the scope of the Policy's coverage. He instead seems to take the position that he saw no need to include the Polaris Ranger in the Policy. As such, even if the term "vehicle" were ambiguous, the Court cannot conclude that Halfhill's expectations for UIM coverage reasonably extended to his operation of the Polaris Ranger.[3] *See Estate of Swartz v. Metro. Prop. & Cas. Co.*, 949 S.W.2d 72, 75-76 (Ky. Ct. App. 1997) (rejecting inquiry into the insured's subjective expectations and holding that "[u]nder Kentucky law, the proper area of inquiry is what the [insureds] could reasonably expect in light of what they actually paid for, not what they personally expected."). Therefore, the Court cannot conclude that the Policy's owned-but-not-insured provision somehow offends Halfhill's reasonable expectations with regard to the coverage that he bought and paid for.

A number of Kentucky decisions since *Chaffin* likewise have found no difficulty enforcing similar owned-but-not-insured exclusions. *See Larkin v. United Servs. Auto Ass'n*, 2011 WL 6260361, at *1-2 (Ky. Ct. App. Dec. 16, 2011); *Motorists Mut. Ins. Co.*

---

[3] This point is underscored by the fact that Halfhill was operating the Polaris Ranger, an unlicensed vehicle intended for off-road use only, on a public roadway at the time of the accident. *See generally* Ky. Rev. Stat. § 189.515(1) (prohibiting the operation of all-terrain vehicles on public roadways).

*v. Hartley*, 2011 Ky. App. LEXIS 938 (Ky. Ct. App. Feb. 11, 2011); *Burton v. Ky. Farm Bureau Mut. Ins. Co.*, 326 S.W.3d 474 (Ky. Ct. App. 2010); *Murphy v. Ky. Farm Bureau Mut. Ins. Co.*, 116 S.W.3d 500 (Ky. Ct. App. 2003); *Baxter v. Safeco Ins. Co. of Am.*, 46 S.W.3d 577 (Ky. Ct. App. 2001); *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437 (1997); *Windham v. Cunningham*, 902 S.W.2d 838 (Ky. 1995). As the Kentucky Court of Appeals explained in *Larkin*, allowing an insured to recover UIM benefits for damages arising from the operation of an uninsured vehicle necessarily would lead to the illogical result that "a person could insure a single vehicle . . . and then operate a fleet of uninsured vehicles for which [the insurer] would be liable for UIM benefits despite not having assumed the risk nor received any premiums for those uninsured vehicles." 2011 WL 6260361, at *2. Thus, this Court is unpersuaded that the owned-but-not-insured clause in the Policy at issue should be found void or otherwise unenforceable on public-policy grounds.

Of final note, the Court recognizes that UIM coverage is personal to the insured and does not relate to a specific vehicle. *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 126 (Ky. Ct. App. 2012). Still, "[t]he purpose of UIM coverage is not to compensate the insured . . . from his own failure to purchase sufficient liability insurance." *Windham*, 902 S.W.2d at 841. Accordingly, the Kentucky Court of Appeals has interpreted *Windham* as "demonstrat[ing] that UIM coverage is limited by the policy language to which the parties agree, and the reasonable expectations of the parties." *Larkin*, 2011 WL 6260361, at *2 (applying *Windham*, 902 S.W.2d at 841). As noted above, the clear language of the Policy's owned-but-not-insured provision cannot be

read to offend the Halfhills' reasonable expectations for UIM coverage. Thus, the Court concludes that Policy's owned-but-not-insured provision is enforceable.

## CONCLUSION

For the foregoing reasons, the Court will GRANT Encompass's Motion for Summary Judgment, (Docket No. 25), and enter judgment in Encompass's favor. Halfhill's Counter Motion for Summary Judgment, (Docket No. 26), will be DENIED. An appropriate Order will issue concurrently with this Opinion.

Date:

cc: Counsel